In re Marcia Nell HOLT and
Marvin Joe Holt.

**FEDERAL SAVINGS AND LOAN
INSURANCE CORPORATION,**
Appellee/Cross–Appellant,

v.

**Marcia Nell HOLT,**
Appellant/Cross–Appellee.

**FEDERAL SAVINGS AND LOAN
INSURANCE CORPORATION,**
Appellee/Cross–Appellant,

v.

**Marvin Joe HOLT,**
Appellant/Cross–Appellee.

Nos. 89–1228, 89–1272.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1989.

Decided Jan. 30, 1990.

Robert T. Laurence, Fayetteville, Ark., for appellant/cross-appellee.

Charles W. Baker, Little Rock, Ark., for appellee/cross-appellant.

Before BOWMAN and BEAM, Circuit Judges, and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

In this consolidated appeal, Marcia Holt and her son, Marvin Holt, appeal from the district court's order,[1] affirming the decision of the bankruptcy court,[2] that as bankruptcy exemptions, their life insurance benefits and policies' cash surrender value have a $500 ceiling under the Arkansas Constitution, article 9, section 2. We affirm.

The stipulated facts are as follows: Marcia's husband died on October 4, 1986, thereby entitling her to the proceeds of four life insurance policies totalling $290,004.11. In anticipation of filing bankruptcy and on her attorney's advice, Marcia sold certificates of deposit and purchased a $116,000 policy on her own life on November 25, 1986, with a cash surrender value of $10,000. She filed a chapter 7 bankruptcy petition on December 5, 1986. Additionally, she had a $10,000 policy on herself, purchased on February 2, 1982, with a cash surrender value of $577.

Marvin also filed a bankruptcy petition. After his decision to do so but before filing, he used money from an annuity to increase the death benefit from $100,000 to $200,000 by paying an additional premium of $6,491.88 on a policy purchased on June 8, 1984, insuring his life. Another of his policies purchased on December 19, 1973, had a cash surrender value of $1,400 and a face value of $3,515.

Marcia claimed the life insurance proceeds (now in the hands of the trustee) as exemptions under state law, Ark.Code Ann. § 16–66–209.[3] Both she and Marvin also

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

2. The Honorable Robert F. Fussell, Chief Judge, United States Bankruptcy Court for the District of Arkansas.

3. **Exemption—Proceeds of life, health, accident, and disability insurance.** All moneys paid or payable to any resident of this state as the insured or beneficiary designated under any insurance policy or policies providing for the payment of life, sick, accident, or disability. benefits shall be exempt from liability or seizure under judicial process of any court and shall not be subjected to the payment of any debt by contract or otherwise by any writ, order, judgment, or decree of any court....

claimed the cash surrender value of their own life insurance policies as exempt. The Federal Savings and Loan Insurance Corporation (FSLIC), the major unsecured creditor, objected to these exemptions as violative of the $500 ceiling imposed by article 9, section 2, of the Arkansas Constitution.[4]

The bankruptcy court found that the insurance proceeds and cash value of insurance policies could be included as part of the personal property exemption subject to the $500 constitutional limit. *In re Holt,* 84 B.R. 991 (Bankr.W.D.Ark.1988). The court also found that the Holts had not fraudulently converted non-exempt assets on the eve of bankruptcy. *Id.* at 1008. The district court agreed that the exemption is not absolute, but is limited by the $500 cap in the constitution, and affirmed. *In re Holt,* 97 B.R. 997 (W.D.Ark.1988). The Holts appeal the decision that the exemption for life insurance proceeds and cash surrender values, Ark.Code Ann. § 16–66–209, is limited to $500 by the Arkansas Constitution. FSLIC cross-appeals, arguing that the district court erred in holding that the purchases on the eve of bankruptcy were not fraudulent conveyances.

The federal bankruptcy scheme, 11 U.S.C. § 522(b)(2)(A), directs us to Arkansas state law. Section 16–66–209 is made part of the Arkansas bankruptcy scheme through § 16–66–218(b)(7). Section 16–66–218 provides in relevant part:

**Exemptions from execution under federal bankruptcy proceedings.**

(a) The following property shall be exempt from execution under bankruptcy proceedings pursuant to Public Law 95–598:

.        .        .        .        .

(b) The exemptions granted in subsection (a) of this section shall be in addition to the present exemptions granted by Arkansas law as listed below:

.        .        .        .        .

(7) Proceeds of life, health, accident, and disability insurance—§ 16–66–209;

It is conceded that life insurance proceeds and cash surrender value are personal property within the meaning of article 9, section 2.

The Holts argue the constitutional issue is not one of first impression as the lower courts found, but has been decided in *W.B. Worthen Co. v. Thomas,* 188 Ark. 249, 65 S.W.2d 917 (1933), *rev'd,* 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934). In *Worthen,* the Arkansas Supreme Court held that a nonbankruptcy debtor's insurance policy proceeds were exempt from garnishment on a judgment pursuant to § 16–66–209. The United States Supreme Court reversed, finding the statute enacted on March 16, 1933, impaired the obligation of contracts as the judgment was dated March 10, 1933. The bankruptcy court distinguished the United States Supreme Court's *Worthen* decision as holding § 16–66–209 unconstitutional as retroactively applied for garnishment purposes.

The *Worthen* Court quoted the purpose of the statute in question as " 'exempting [moneys payable to beneficiaries of life insurance policies] from the operation of our general statutes regulating the issuance of garnishments and proceedings thereunder.' " *Id.,* 65 S.W.2d at 918 (quoting *Acree v. Whitley,* 136 Ark. 149, 206 S.W. 137, 138 (1918)). The Court noted that the exemption was only for garnishment purposes and " 'not enacted for the purpose of allowing beneficiaries exemptions which they are not entitled to under the [Arkansas] Constitution and laws of this state.' " *Id.* (quoting *Acree* ). The *Worthen* holding is clearly limited to the constitutionality of section 16–66–209 in the garnishment setting.

---

Ark.Code Ann. § 16–66–209 (1987).

4. **Heads of families—Exempt personal property.** The personal property of any resident of this State who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars in addition to his or her wearing apparel, and that of his or her family, shall be exempt from seizure on attachment, or sale on execution, or other process from any court on debt by contract. Ark. Const., art. 9, § 2 (1947).

Exemption from garnishment, however, does not equate to protection from all legal process. In our view, the *Worthen* decision had the effect of delaying a creditor from garnishing a debtor. After entry of judgment and payment of the money to the debtor, the creditor could reach it by execution on the judgment. The situation of the present case is quite different. Here, after the debtor in bankruptcy is discharged, the creditor has no means of reaching the proceeds or cash value of the policies. We therefore distinguish *Worthen* on the basis of the difference between a prohibition on garnishment and an absolute exemption.

The bankruptcy court also distinguished the decision of *Acree v. Whitley, supra* (finding exemption for proceeds of benefit certificate unlimited by art. 9, § 2, in garnishment proceeding). The benefit exemption statute in *Acree* was found not to relate to an absolute exemption from execution but only to garnishment proceedings. Again, this decision is limited to the garnishment setting and is not controlling authority on the facts at hand. *See* Note, *In re Holt: Personal Property Exemptions and the Forgotten Arkansas Constitution,* 42 Ark.L.Rev. 759 (1989).

> *Acree* and *Worthen* make clear that the process prohibition, garnishment, is constitutional because at some time in the future the creditor may reach the funds in the possession of the debtor. Because the debt will be discharged in the bankruptcy proceeding, the garnishment disallowance in *Holt* would elevate a mere process prohibition to an exemption which both *Acree* and *Worthen* acknowledged is controlled by the constitution.

*Id.* at 768 n. 55.

■■ The Holts argue that section 209's protection of exemptions is limited in time; and that it protects before payment and is removed after payment. We are, however, unable to reconcile the broad, literal language of section 16–66–209 (exempting "[a]ll moneys paid or payable to ... the insured or beneficiary ... from liability or seizure under judicial process") with a plain reading of article 9, section 2 of the Arkansas Constitution. On its face,

section 209 creates an unlimited exemption. Rules of statutory construction mandate that legislative actions are subject to constitutional provisions and will be declared unconstitutional if clearly incompatible with them. *Jones v. Mears,* 256 Ark. 825, 827–28, 510 S.W.2d 857, 859 (1974). We therefore hold that section 16–66–209 is unconstitutional as applied to debtors in bankruptcy because it is in direct conflict with the overriding $500 limitation imposed by article 9, section 2. It does not exempt property from inclusion in the bankruptcy estate pursuant to Ark.Code Ann. § 16–66–218(b)(7) and 11 U.S.C. § 522(b)(2)(A). *See In re Hudspeth* 92 B.R. 827 (Bankr.W.D.Ark.1988).

■■ The bankruptcy court acknowledged that a debtor may convert non-exempt assets into exempt assets on the eve of bankruptcy. *See In re Lindberg,* 735 F.2d 1087, 1090 (8th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984). The conversion, however, must not be done with intent to defraud creditors manifested by extrinsic evidence. *See McCormick v. Security State Bank,* 822 F.2d 806, 808 (8th Cir.1987). We may reverse a bankruptcy court's finding of no intent to defraud only if such finding is clearly erroneous. *Hanson v. First Nat'l Bank,* 848 F.2d 866, 868 (8th Cir.1988).

■ The Holts did not have exorbitant amounts of existing life insurance coverage before they openly purchased reasonable amounts of additional coverage. The money placed into exempt property was not borrowed. There is no evidence that they lied to or misled creditors. The district court's finding of a lack of intent to conceal, hinder, delay, or defraud creditors in the Holt's transfers while possibly incorrect, is not clearly erroneous. *See Hanson, supra.*

We must express our dissatisfaction with the divergent results reached when actions of pre-bankruptcy planning are challenged as fraudulent conveyances. *See Hanson, supra,* at 870–71 (Arnold, J., concurring). The parties point out that transfers made in contemplation of bankruptcy and upon advice of counsel have been held lawful,

see *Hanson, supra,* at 869, while those made upon counsel's advice on the eve of bankruptcy, converting non-exempt assets to potentially unlimited exempt assets, have been ruled fraudulent. *See Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 876 (8th Cir.1988). We are of course limited by the district court's factual findings in this case, and believe that the transfers to exempt property, now curbed in amount to $500, were not manifested by extrinsic evidence to defraud creditors.

Accordingly, the decision of the district court is affirmed and the cross-appeal is denied.